UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

ABDULHAQ RAHIM,

*Petitioner*,

v. Case No. 3:26-cv-2887-JEP-SJH

WARDEN, NORTH FLORIDA DETENTION FACILITY, et al.,

*Respondents*.
______________________________/

**ORDER**

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on October 22, 2026.[1] (*See generally* Doc. 1). Petitioner argues, among other things, that his prolonged detention violates the Fifth

[1] At the time Petitioner filed this case, he was housed at Baker Correctional Institute in Sanderson, Florida. (Doc. 1 at 2). According to the Federal Respondent, he is currently housed at a detention facility in Louisiana. (Doc. 7 at 3). Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g.*, *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See id.* at 7–9). He asks the Court to order his release. (*Id.* at 12).

The Federal Respondent filed a response in opposition to the petition. (*See generally* Doc. 7). According to the Federal Respondent, Petitioner's claim is premature because he remains within the presumptively reasonable removal period and there is a significant likelihood of removal in the reasonably foreseeable future. (*Id.* at 3–6). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case because ICE has transferred Petitioner to a facility in Louisiana. (*See generally* Doc. 8). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Afghanistan, entered the United States without inspection on December 5, 2022. (Doc. 7-1 at 2). An immigration judge ordered Petitioner removed on April 18, 2025, (Doc. 7-2 at 1–4), and the Board of Immigration Appeals dismissed his appeal on April 20, 2026, (Doc. 7-3 at 2–4). After approximately six months of detention, Petitioner filed a petition for writ of habeas corpus in the United States District Court for the Western District of Washington. (Doc. 1-1 at 14). On October 13, 2026, the assigned judge granted the petition because there was no significant likelihood of removal in the reasonably foreseeable future and directed Petitioner's immediate release.

(*Id.* at 22). On that same day, ICE released Petitioner. (Doc. 7-5 at 1). However, six days later, on October 19, 2026, ICE re-detained Petitioner. (*Id.*). According to the Federal Respondent, ICE re-detained Petitioner because it had obtained a travel document for him and Petitioner's removal is scheduled to take place in November. (Doc. 7-8 at 1).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'" *Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient

evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, Petitioner was taken into ICE custody on December 4, 2024, and released pursuant to a federal court order on October 13, 2026. (Doc. 7-5 at 1). ICE re-detained Petitioner on October 19, 2026, and he filed this case on October 22, 2026. (*Id.*). The Federal Respondent urges this Court to not consider Petitioner's prior period of detention to calculate the presumptively reasonable six-month period and therefore find that Petitioner's *Zadvydas* claim is premature. (Doc. 7 at 5).

A split of authority exists as to when the six-month period begins. Some courts have determined that each period of detention restarts the removal-period clock. *See, e.g.*, *Barrios v. Ripa*, No. 1:25-cv-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (rejecting a petitioner's argument "that his detention should be counted in the aggregate based upon his prior detentions"); *Liu v. Carter*, No. 25-3036-JWL, 2025 WL 1207089, at *2 (D. Kan. Apr. 25, 2025) ("[T]he removal-period clock restarts when an alien subject to a removal

order is again detained by ICE."); *Leybinsky v. U.S. Immigr. & Customs Enf't*, No. 10 CIV. 5137 RA, 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013) (collecting cases), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014). Other courts have aggregated all periods of detention following an order of removal, regardless of whether there were any intervening periods of release from custody between periods of detention. *See, e.g.*, *Jaranow v. Bondi*, No. 2:25-cv-02396-TL, 2026 WL 35864, at *3 (W.D. Wash. Jan. 6, 2026) (collecting cases from the Ninth Circuit that "have found that the six-month period of detention need not be consecutive to reach the limit established in Zadvydas"); *Patel v. Bondi*, No. CV 25-16218 (KMW), 2025 WL 3294353, at *2 (D.N.J. Nov. 26, 2025) (finding that the court must "consider the entire period of [the p]etitioner's detention"—not just the length of the current detention).

In prior cases, this Court has largely declined to find that aggregating prior periods of detention is appropriate. *See, e.g.*, *Vargas v. U.S. Immigr. & Customs Enf't*, No. 3:26-CV-440-JEP-PDB, 2026 WL 815843, at *2 (M.D. Fla. Mar. 25, 2026) (finding that aggregating petitioner's past period of detention "is not appropriate here"). However, the circumstances of this case compel this Court to take a different approach here. "Most courts to consider the [aggregate] issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining

them." *Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) (collecting cases across circuits). And that underlying concern as to release and immediate re-detention is present here. Indeed, a federal district court previously directed Petitioner's release because it determined there was no likelihood of removal to Afghanistan. Not even a week after that order, ICE re-detained Petitioner based on its own determination that there was a significant likelihood of removal.

The Federal Respondent now represents to this Court that it has obtained a travel document for Petitioner. (Doc. 7-8 at 1). However, in Petitioner's prior action, ICE alleged that it could not obtain a travel document because Petitioner refused to assist immigration officials. (Doc. 1-1 at 19). The Federal Respondent wholly fails to explain what circumstances have changed in the short period of time between that judge's finding and Petitioner's re-detention. Thus, the Court finds that when considering Petitioner's prior period of detention, the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. The United States' relationship with Afghanistan is such that removals

cannot take place.[2] (Doc. 1-1 at 19). Indeed, according to Petitioner, the United States has no embassy in Afghanistan. (*Id.*) Thus, the burden shifts to the Federal Respondent to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondent fails to do so.

The Federal Respondent asserts that Petitioner's removal is significantly likely to occur in the reasonably foreseeable future because ICE has obtained a "travel document" for Petitioner and intends to remove him to an unspecified country on an unspecified day in November. (Doc. 7 at 6; *see also* Doc. 7-8 at 1). These generalities are not persuasive. The Federal Respondent does not describe the type of travel document that ICE has recently obtained to effectuate Petitioner's removal or even identify to which country ICE intends to remove Petitioner. The Federal Respondent also fails to offer a specific departure date or the manner in which the departure will occur (*e.g.*, charter flight). Petitioner now has been in ICE custody for seven months following his order of removal with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

[2] Petitioner refers the Court to his arguments and the findings in his prior habeas case. (*See* Doc. 1 at 6).

Thus, based on the evidence presented, the Court finds that the Federal Respondent has failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release").

Accordingly, it is **ORDERED**:

1. Petitioner's motion to preserve jurisdiction (Doc. 6) and the Warden's motion to dismiss (Doc. 8) are **DENIED as moot**.
2. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[3] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide

[3] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

Petitioner with access to a telephone to arrange transportation from the detention facility.

3. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on November 6, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

c:
Abdulhaq Rahim
Counsel of Record